ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 08 706

JOSEPH CARIOGGIA
and LINDA CARIOGGIA,

Plaintiffs,

vs.

DAVOL INC. and C. R. BARD INC.,

Defendants.

Civil Action No. ROSS, J.

**ORIGINAL COMPLAINT**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 20 2008 ★
BROOKLYN OFFICE

Plaintiffs, by and through their counsel, Milberg Weiss LLP, allege upon information and belief as follows:

## I. PARTIES

1. Plaintiffs JOSEPH CARIOGGIA AND LINDA CARIOGGIA (hereinafter collectively referred to as "PLAINTIFFS") are individuals and citizens and residents of San Jose, Santa Clara County, California.

2. Defendant DAVOL INC. (hereinafter referred to as "DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patch ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, homeostasis, orthopedics, and laparoscopy.

3. Defendant DAVOL was and is authorized to do business in the State of New York. Defendant DAVOL did and does business and solicits business in New York.

4. Defendant DAVOL derived substantial revenue from goods used or services provided in the State of New York and derives substantial revenue from interstate commerce.

5. Defendant C. R. BARD INC. (hereinafter referred to as "BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch.

6. Defendant BARD was and is authorized to do business in the State of New York. Defendant BARD did and does business and solicits business in New York.

7. Defendant BARD derived substantial revenue from goods used or services provided in the State of New York and derived substantial revenue from interstate commerce.

8. Defendants BARD and DAVOL had and have as a registered agent for service of process, CT Corporation Systems, located at 111 8th Avenue, New York, New York 10011.

9. Defendant DAVOL was and is a wholly owned subsidiary of defendant BARD.

## II. JURISDICTION

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the case is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202, and to award costs and attorneys' fees under 28 U.S.C. § 2412.

12. This Court has personal jurisdiction over Defendants because they, at all times relevant, conducted substantial and continuous business in the State of New York and derived substantial revenue for goods used or services provided in the State of New York.

## III. FACTS

13. The Kugel Patch is used to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is made of two pieces of mesh that surround a flexible plastic ring. The surgeon places the mesh patch in a small incision. The surgeon folds the patch and places it at the site of the hernia. The released ring is then designed to spring back into its original shape, flattening the patch. The meshlike material serves as a substrate, allowing the hernia patient's own tissue to grow and assist in healing the hernia.

14. The Kugel Patch is manufactured by BARD and their subsidiary, DAVOL (also collectively referred to as "Defendants"), who owns the patent on the device.

15. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

16. Soon after the Kugel Patch was placed on the market, DAVOL and BARD began receiving notices of Kugel Patch defects and failures. Not only was there no device history record (DHR) review performed—as called for by protocol—but also

DAVOL and BARD actively and intentionally concealed these notices concerning defective and dangerous condition(s) associated with the Kugel Patch from Plaintiff, Plaintiff's physicians, the FDA and the general public.

17. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews beginning in 2002. According to protocol, these surveys and reviews were needed before placing the device on the open market. Furthermore, an Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys, including those which demonstrated unfavorable or "dissatisfied" results. DAVOL and BARD actively and intentionally concealed these complaints and concerns of the physician surveyors from Plaintiff, Plaintiff's surgeons, the FDA and the public at large.

18. On November 8, 2001, Plaintiff underwent repair of an incisional hernia at Los Gatos Surgical Center in Los Gatos, California. Plaintiff's hernia was repaired with a small oval Kugel Composix Patch (8cm. x 12cm.) (Product Code No. 0010201, Lot No. 43ILD110). On December 17, 2004, Plaintiff was once again admitted to Los Gatos Surgical Center in Los Gatos, California and underwent repair of an incarcerated incisional hernia. Plaintiff's hernia was repaired with a small oval Kugel Patch (8cm. x 11.76cm.) (Product Code No. 0010101, Lot No. 43AOD327). .Finally, on May 29, 2007, Plaintiff was admitted to Good Samaritan Hospital in San Jose, California and underwent

repair of a recurrent incisional hernia with a Composix Kugel Patch (20.3cm. x 25.4cm.) (Product Code No. 0113810, Lot No. 43KQD672).

19. The three Kugel Patches implanted in Plaintiff were designed, manufactured, sold and distributed by Defendants to be used by surgeons for ventral hernia repair surgeries and were further represented by Defendants to be appropriate, cost-effective and suitable products for such purpose.

20. At the time of his operations, Plaintiff was not informed of, and had no knowledge of, the complaints, known complications and risks associated with the Kugel Patch, nor was Plaintiff on notice that the Kugel Patch was to be recalled.

21. During the spring and summer period of 2005, there was a substantial increase in the number of complaints with the Kugel Patch. Defendants' corporate executives were notified and thus made aware of these complaints. Nevertheless, in spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch manufacturing hold, and it was not until December 8, 2005 that the Defendants finally commenced a distribution hold. (Defendants have since admitted that these product quality hold and release procedures were not applied on a timely basis.) Furthermore, Defendants actively and intentionally chose not to immediately inform Plaintiff, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patch of the numerous complaints and complications they were on notice of, nor of the holds in effect.

22. On December 22, 2005, DAVOL recalled many sizes of the Kugel Patch under a Class I recall notice. A FDA Class I recall is issued for problems related to

medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices. Plaintiff was given no notice of the Kugel Patch recall.

23. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

a. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

b. misidentified numerous Kugel Patch complication events;

c. failed to apply the product quality hold and release procedure on a timely basis;

d. failed to properly follow the procedures for conducting design validation review;

e. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;

f. failed to provide full information which they knew regarding numerous Kugel Patch complaints;

g. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch

complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

24. On March 24, 2006, the initial Class I recall on the Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

25. On January 10, 2007, the existing recall on the Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product. As of that date, the total number of recalled Kugel Patch that were distributed amounted to more than 100,000 units.

26. On November 8, 2001, Plaintiff underwent repair of a recurrent incisional hernia at Los Gatos Surgical Center in Los Gatos, California. Plaintiff's hernia was repaired with a small oval Kugel Composix Patch (8cm. x 12cm.) (Product Code No. 0010201, Lot No. 43ILD110). The operative report states that "[Plaintiff] tolerated the procedure well. He was sent to the recovery room in satisfactory condition."

27. On or about August 2004, Plaintiff began experiencing severe abdominal pain, nausea, and vomiting. Plaintiff sought follow-up care at Good Samaritan Hospital in San Jose, California.

28. Still unaware of the Kugel Patch recalls or the complications and defects known by Defendants to be associated with the Kugel Patches, Plaintiff sought medical treatment. His physicians, however, were unable to diagnose the cause of his suffering and attributed it to standard hernia repair or infection.

29. Plaintiff's condition worsened progressively, and on or about August 18, 2004 the pain he was experiencing became extremely severe and debilitating. An

abdominal/pelvic CT scan of Plaintiff's abdomen revealed a partial bowel obstruction. Plaintiff was treated with antibiotics and intravenous fluids with gradual improvement. The repeat CT scan of the abdomen did not show another abnormality other than the possible small bowel obstruction which appeared to be secondary to adhesions.

30. On December 17, 2004, Plaintiff was admitted to Los Gatos Surgical Center in Los Gatos, California and underwent repair of an incarcerated incisional hernia. Plaintiff's hernia was repaired with a small oval Kugel Patch (8cm. x 11.76cm.) (Product Code No. 0010101, Lot No. 43AOD327).

31. On May 29, 2007, Plaintiff was admitted to Good Samaritan Hospital in San Jose, California and underwent repair of a recurrent incisional hernia, removal of the Kugel patch implanted in December 2004, and lysis of adhesions. During the surgery, the hernia sac was entered and was found to be separated from the upper portion. It was discovered that there were multiple areas of the Kugel Patch ring, which were broken. The Kugel Patch was then removed completely. After the adhesions were removed between the small bowel and the anterior abdominal wall of the side of the hernia, a Composix Kugel Patch (20.3cm. x 25.4cm.) (Product Code No. 0113810, Lot No. 43KQD672) was placed. Plaintiff was required to remain in the hospital for one [1] day following the surgery.

32. On June 28, 2007, Plaintiff was admitted to Los Gatos Surgical Center in Los Gatos, California and was diagnosed with cellulitis of the abdominal wall with inter abdominal wall fluid collection and possible abscess. The procedure required an incision and drainage of the fluids overlying the mesh, which had been implanted in May 2007, in the ventral aspect of the abdomen by placement of a Jackson Pratt catheter.

33. On July 27, 2007, Plaintiff was admitted to Good Samaritan Hospital in San Jose, California to remove the May 29, 2007 mesh which was chronically infected. A CT scan showed fluid collection in the anterior abdominal wall and fat stranding consistent with chronic inflammation/infection. As a result, an abdominal wall reconstruction with component separation technique and inlay and onlay of Surgisis allograft was performed. Plaintiff was required to remain in the hospital for four [4] days following the surgery.

34. Because of the three defective Kugel Patches and all the medical visits and surgeries necessitated, Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

35. Plaintiff has also incurred substantial medical bills and has suffered loss of other monies due to the three defective Kugel Patches that were implanted in his body.

36. Upon information and belief, DAVOL and BARD failed to comply with the FDA application and reporting requirements.

37. Upon information and belief, DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

38. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

39. Upon information and belief, the complications and failures associated with the Kugel Patch are not limited to the sizes which DAVOL and BARD have already recalled.

40. Upon information and belief, DAVOL and BARD were aware of the defects in the manufacture and design of the non-recalled Kugel Patch sizes and chose not to issue a recall on all Kugel Patch in the face of the high degree of complication and failure rates

## IV. CAUSES OF ACTION

### COUNT I:

### Negligence

41. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs 1-40 as though fully set forth herein.

42. Defendants DAVOL and BARD were negligent to Plaintiff in the following respects:

43. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use of the Kugel Patch.

44. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patch was of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch users.

45. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were unreasonably dangerous and unsafe for the use and purpose for which it was intended.

46. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury and they failed to disclose the known or knowable risks associated with the Kugel Patch. Furthermore, DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Plaintiff.

47. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn him and his treating physicians of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

48. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

49. As a direct and proximate result of the duties breached, the three Kugel Patches used in Plaintiff's hernia repair surgeries failed, resulting in much pain and suffering, mental anguish, doctor visits, subsequent procedures, and hefty medical bills.

50. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT II:**

**Breach of Express Warranty Against Defendants**

51. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-50 as though fully set forth herein.

52. Defendants DAVOL and BARD expressly warranted that their Kugel Patch, including the subject patches, would be designed and constructed in a careful, diligent, and workmanlike manner, free of design and construction defects, and would be safe, reliable and effective in performing their intended and foreseeable use(s).

53. Plaintiff, individually and through his physicians, relied upon the skill and judgment of Defendants DAVOL and BARD.

54. Plaintiff, individually and through his physicians, relied upon the representations and warranties of Defendants DAVOL and BARD.

55. All of the aforementioned representations were false, misleading and inaccurate in that the Kugel Patch placed into the stream of commerce by the Defendants, such as and including the subject patches, were defective, unreasonably dangerous, hazardous and neither merchantable, fit, suitable nor safe for their intended uses(s).

56. The subject patches were not designed and/or constructed in a careful, diligent and workmanlike manner, free of design and construction defects.

57. Defendants DAVOL and BARD thereby breached their express warranties.

58. As a direct and proximate result of this breach of express warranties, the Plaintiff suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

59. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT III:**

**Breach of Implied Warranty Against Defendants**

60. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-59 as though fully set forth herein.

61. Defendants DAVOL and BARD were and remain engaged in the business of designing, manufacturing, testing, marketing distributing promoting and/or selling Kugel Patch, including the subject patches, and their component parts, for ultimate use by and implantation in the bodies of patients, including the Plaintiff, by and through physicians, hospitals, and other health-care providers.

62. Defendants DAVOL and BARD are merchants of the Kugel Patch.

63. By placing the Kugel Patch into the stream of commerce, the Defendants impliedly warranted and represented that their Kugel Patch, including the subject patches, were merchantable, and fit, suitable and safe for their intended use(s).

64. The Plaintiff, individually and through his physicians, relied upon the skill and judgment of Defendants DAVOL and BARD.

65. The Plaintiff, individually and through his physicians, relied upon the representations and warranties of Defendants DAVOL and BARD.

66. All of the aforementioned representations were false, misleading and inaccurate in that the Kugel Patch placed into the stream of commerce by the Defendants, such as and including the subject patches, were defective, unreasonably dangerous, hazardous and neither merchantable, fit, suitable nor safe for their intended use(s).

67. The Kugel Patch placed into the stream of commence by the Defendants, such as and including the subject patches, were also inadequately contained, packaged, and labeled in that the Defendants misrepresented and/or omitted material facts regarding the safety, reliability, and effectiveness of these products, which were neither merchantable, fit, safe nor suitable for their intended use(s).

68. The defects in the Kugel Patch, including the subject patches, such as defective recoil ring welds, were present at the time the product(s) left the hands of the Defendants and placed into the stream of commerce.

69. The Defendants thus breached implied warranties of merchantability, fitness and suitability with respect to the Kugel Patch, such as and including the subject patches.

70. The Plaintiff was and remains an intended and foreseeable user of the Defendants' Kugel Patch, and as a direct and proximate result of the Defendants' breach of implied warranties, he suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, loss wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

71. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT IV:**

**False Advertising Against Defendants**

72. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-71 as though fully set forth herein.

73. General Business Law § 350 declares unlawful advertising that is false or misleading in a material respect in the conduct of any business or in the furnishing of any service.

74. The aforementioned acts, representations and/or omissions by Defendants were deceptive and misleading practices and/or advertising within the meaning of New York's General Business Law.

75. In reliance upon the foregoing misrepresentations and/or omissions of material fact by the Defendants, the Plaintiff and/or the Plaintiff's physician(s) were induced to and did, to their detriment, subject themselves to using the Defendants' Kugel Patch. Had the Defendants not made the foregoing misrepresentations and/or omissions of material fact, the Plaintiff and/or the Plaintiff's physician(s) could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments or products. The reliance of the Plaintiff and the Plaintiff's physician(s) was justified and reasonable, because the foregoing misrepresentations and or omissions of material facts were made by individuals and entities who were in a position to know the true facts.

76. As a direct and proximate result of the Defendants' false advertising, the Plaintiff suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

77. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of

the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT V:**

**Deceptive Trade Practices Against Defendants**

78. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-77 as though fully set forth herein.

79. Before, after, and at the time of the manufacture, promotion, marketing and sale of the subject patches to Plaintiff, Defendants DAVOL and BARD possessed detailed technical information and had knowledge that their Kugel Patch posed potentially significant and life-threatening hazards to patients relying upon them.

80. Defendants DAVOL and BARD concealed this information from Plaintiff and his treating physicians, as well as the consuming public and physicians in general.

81. As set forth above, Defendants DAVOL and BARD had a duty to exercise reasonable care in the design, testing, development, manufacture, labeling, distribution, promotion, marketing and sale of their Kugel Patch and their component parts, including the subject patches. This duty included an obligation to ensure that the Kugel Patch and/or any component part did not fail, break or splinter because of a design and/or manufacturing defect when used as instructed by the Defendants for their intended and foreseeable purpose(s). This duty also included a duty to warn of known defects that may lead to serious injury or risk of serious injury.

82. Defendants DAVOL and BARD made misrepresentations of material facts, including but not limited to:

a. misrepresenting that their Kugel Patch, including the subject patches, were fit for their intended uses and of merchantable quality;

b. misrepresenting that their Kugel Patch, including the subject patches, were reliable;

c. misrepresenting that their Kugel Patch, including the subject patches, were safe and effective for the treatment of medical conditions such as those affecting Plaintiff;

d. misrepresenting that their Kugel Patch, including the subject patches, would function as intended when necessary;

e. misrepresenting that their Kugel Patch, including the subject patches, would not function improperly;

f. misrepresenting that their Kugel Patch, including the subject patches, were not defective;

g. misrepresenting that their Kugel Patch, including the subject patches, would not otherwise fail to function as intended when put to their expected, intended, foreseeable, and/or ordinary purpose(s); and

h. misrepresenting that their Kugel Patch, such as the subject patches, were not inherently dangerous.

83. Defendants DAVOL and BARD made omissions of material facts, known to them, and which they were obligated to disclose, including but not limited to:

a. omitting to disclose the material fact that Kugel Patch, such as the subject patches, were defective, such that they and/or their component parts would break and/or splinter upon insertion, and/or otherwise fail to function as intended;

b. omitting to disclose the material fact that the Defendants knew of numerous failures of Kugel Patch;

c. omitting to disclose the material fact that the Kugel Patch was not "reliable";

d. omitting to disclose the material fact that Kugel Patch, including the subject patches, were not safe and effective in the treatment of the medical conditions, such as that affecting Plaintiff, for which they were intended;

e. omitting to disclose the material fact that Kugel Patch, including the subject patches, would not function as intended when necessary; and

f. omitting to disclose the material fact that Kugel Patch, including the subject patches, were inherently dangerous.

84. These misrepresentations and/or omissions of material fact were false and misleading at the time they were made.

85. Defendants DAVOL and BARD negligently and/or carelessly made the foregoing misrepresentations of material fact without basis or adequate information on which to accurately base those representations. Alternatively, the Defendants omitted the foregoing material facts negligently and/or carelessly without basis or adequate information upon which to justify such omissions of material fact and/or with actual knowledge and information to make additional disclosure reasonable and appropriate.

86. Defendants had a duty to disclose all relevant information about the risks of their Kugel Patch, including the subject patches, to Plaintiff and his treating physicians under laws requiring them not to engage in false and deceptive trade practices, and as otherwise alleged in this Complaint, because: (a) Defendants made representations and partial disclosures concerning the nature and quality of their products which they had a duty to correct; (b) Defendants were in a superior position to know the true state of facts about the dangerous and defective nature of their Kugel Patch, including the subject patches, and the risks the subject patches posed to Plaintiff; and (c) the effects and dangers posed by the defective Kugel Patch, including the subject patches, were not readily apparent.

87. In the alternative, when the Defendants made the foregoing misrepresentations or omissions of material fact, they knew or should have known them to be false or omissions of material fact, and such misrepresentations and/or omissions of material fact were made intentionally, deliberately, knowingly, wantonly, recklessly and/or in a grossly negligent manner.

88. In reliance upon the foregoing misrepresentations and/or omissions of material fact by the Defendants, Plaintiff and/or his physician(s) were induced to and did, to their detriment, subject themselves to using Defendants' Kugel Patch, including the subject patches. Had the Defendants not made the foregoing misrepresentations and/or omissions of material fact, Plaintiff and/or his physician(s) could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments or products. The reliance of Plaintiff and his physician(s) was justified and reasonable, because the foregoing misrepresentations and/or omissions of material facts

were made by individuals and entities who were in a position to know the true facts, the Defendants.

89. General Business Law § 349(a) declares unlawful any deceptive acts or practices in the conduct of any business, commerce or trade.

90. As a direct and proximate result of the aforedescribed conduct, misconduct and omissions, Plaintiff suffered serious and permanent injuries, economic losses associated with all aspects of the care and treatment of his injuries, as well as lost wages, any and all consequential damages, and punitive damages. Plaintiff will also seek interest, attorney fees, and costs.

91. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

## COUNT VI:

## Strict Product Liability

92. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-91 as though fully set forth herein.

93. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects:

94. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

95. The Kugel Patch subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. The Kugel Patches inserted into Plaintiff's body during his hernia repair surgeries failed while in his body causing him to develop serious physical complications, and ultimately required him to have subsequent surgeries to remove the three defective meshes.

96. At all times mentioned, the Kugel Patches were substantially in the same conditions as when they left the possession of DAVOL.

97. The Kugel Patches implanted into Plaintiff were being used in a manner reasonably anticipated at the time they were implanted in him by his surgeons.

98. The Kugel Patches, like the ones found in Plaintiff, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

a. The Kugel Patch was sold in a defective condition by design and manufacture;

b. The Kugel Patch as designed and manufactured was unsafe to Plaintiff;

c. The Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;

d. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

e. The Kugel Patch as designed and manufactured was unsafe for its intended use;

f. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

g. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

h. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

i. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

j. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patch for hernia repair surgery as will be learned during discovery.

99. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT VII:**

**Negligent Infliction of Emotional Distress**

100. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-99 as though fully set forth herein.

101. Defendants DAVOL and BARD are liable to Plaintiff for the negligent infliction of emotional distress in the following respect:

102. Plaintiff suffered severe emotional distress, which was as a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

103. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

104. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

105. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT VIII:**

**Intentional Infliction of Emotional Distress**

106. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-105 as though fully set forth herein.

107. Defendants DAVOL and BARD are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:

108. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

109. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in

failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Plaintiff.

110. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

**COUNT IX:**

**Failure to Warn**

111. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-110 as though fully set forth herein.

112. In the course of business, DAVOL and BARD designed, manufactured and sold the three Kugel Patches to Los Gatos Surgical Center in Los Gatos, California and Good Samaritan Hospital in San Jose, California for hernia repair surgeries.

113. In performing Plaintiff's hernia repair surgeries, the operating physician used and inserted into Plaintiff the Kugel Patches that Los Gatos Surgical Center and Good Samaritan Hospital purchased from Defendants.

114. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patches, they were defective

and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patches.

115. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the Kugel Patch devices. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

116. The dangerous and defective conditions in the Kugel Patch existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had his hernia repair surgeries, the Kugel Patches were in the same condition as when manufactured, distributed and sold.

117. Plaintiff did not know at the time of use of the Kugel Patches during his surgeries, nor at any time prior thereto, of the existence of the defects or dangerous propensities in the Kugel Patch.

118. As such, Defendants breached their duty to warn about known defects and are liable to Plaintiff for the injuries he sustained and the costs incurred as a result of using the Kugel Patch.

119. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

## COUNT X:

## Fraud

120. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-119 as though fully set forth herein.

121. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

122. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patches, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patch was not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

123. Defendants BARD and DAVOL were aware of the dangerous and defective condition of the products and intentionally withheld this information from Plaintiff, Plaintiff's physicians, the FDA, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

124. BARD and DAVOL fraudulently represented to Plaintiff, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product even though they were fully aware of the dangerous and defective nature of the Kugel Patch which likely could, and would, cause injuries such as those suffered by Plaintiff.

125. Plaintiff and his physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the three defective Kugel Patches to be implanted.

126. As a direct and proximate result of Plaintiff's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Plaintiff was seriously and permanently injured.

127. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

128. The limitations of liability set forth by CPLR Section 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Section 1602:

a. Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Plaintiff a non-delegable duty of care; and

b. Pursuant to CPLR § 1602(7), Defendants are liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

## COUNT XI:

## Loss of Consortium

129. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-128 as though fully set forth herein.

130. At all times relevant to this Complaint, Plaintiff Linda Carioggia was and continues to be lawfully married to and residing with Plaintiff Joseph Carioggia.

131. By reason of the foregoing, Plaintiff Linda Carioggia was deprived of the services and consortium of said Plaintiff, including, but not limited to companionship, affection, support and solace, and was caused to suffer loss of enjoyment of life, all of which caused Plaintiff's spouse to be damaged and entitled to judgment against Defendants.

132. By reason of the foregoing, Plaintiff incurred and was damaged by Defendants who will be liable to Plaintiff, in addition to an unspecified sum of exemplary damages to be determined at the time of trial.

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, and for such other relief as may be fair and reasonable under the circumstances and for their costs.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL COUNTS.**

DATED: February 20, 2008

Respectfully submitted,

**MILBERG WEISS LLP**

By: ______________________________

Stephanie Hatzakos (SH-2825)
One Pennsylvania Plaza
New York, NY 10119
shatzakos@milbergweiss.com
(212) 594-5300 (Telephone)
(212) 868-1229 (Facsimile)

*Attorneys for Plaintiffs*